**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CODING TECHNOLOGIES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> PRIMO WATER CORPORATION, <br><br> Defendant. | C.A. No. 18-1008-LPS-CJB |

**DEFENDANT PRIMO WATER CORPORATION'S OPENING BRIEF IN SUPPORT OF
ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

OF COUNSEL:

Jacob S. Wharton
WOMBLE BOND DICKINSON (US) LLP
One West Fourth Street
Winston-Salem, NC 27101
(336) 747-6609
Jacob.Wharton@wbd-us.com

Kristen Healey Cramer (No. 4512)
Randolph M. Vesprey (No. 6474)
WOMBLE BOND DICKINSON (US) LLP
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
(302) 252-4320
Kristen.Cramer@wbd-us.com
Randy.Vesprey@wbd-us.com

*Attorneys for Defendant*

Dated: October 3, 2018

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..............................................................................................iii

I.    NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

II.   SUMMARY OF ARGUMENT ...................................................................................... 1

III.  STATEMENT OF FACTS .............................................................................................. 2

    A.    The '159 Patent ..................................................................................................... 2

IV.   ARGUMENT .................................................................................................................. 5

    A.    Legal Standard for Dismissal................................................................................. 5

        1.    This Case Should Be Dismissed at the Pleading Stage
             Pursuant to Rule 12(b)(6) ........................................................................... 5

        2.    The Requirements of 35 U.S.C. § 101 ...................................................... 6

    B.    The '159 patent is Invalid under 35 U.S.C. § 101. ............................................... 7

        1.    *Alice* Step 1 ............................................................................................... 7

             (a)    Claim 1 of the '159 patent is directed to the abstract
                  idea of data recognition and retrieval.............................................. 8

             (b)    Similar patent claims have been found to constitute
                  patent-ineligible subject matter.................................................... 10

        2.    *Alice* Step 2 ............................................................................................. 13

             (a)    Claim 1 contains no inventive concept to transform
                  the abstract idea into patent-eligible subject matter...................... 13

        3.    The Remaining Claims Are Likewise Abstract ........................................ 16

        4.    The Risk of Preemption Confirms that the Claims Are
             Abstract.................................................................................................... 17

V.    CONCLUSION.............................................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**                                                                                       **Page(s)**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
   134 S. Ct. 2347 (2014) ..................................................................................................... passim

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................................................................... 5

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co of Canada (U.S.),*
   687 F.3d 1266 (Fed. Cir. 2012) ...................................................................................... 6, 9, 15

*Berkheimer v. HP Inc.,*
   881 F.3d 1360 (Fed. Cir. 2018) ....................................................................................... 15, 16

*Bilski v. Kappos,*
   561 U.S. 593 (2010) ......................................................................................................... 6, 7, 8

*buySAFE, Inc. v. Google, Inc.,*
   765 F.3d 1350 (Fed. Cir. 2014) ............................................................................................. 15

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,*
   776 F.3d 1343 (Fed. Cir. 2014) ................................................................................... 8, 10, 15

*Cuvillier v. Sullivan,*
   503 F.3d 397 (5th Cir. 2007) .................................................................................................. 6

*Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.,*
   558 F. App'x 988 (Fed. Cir. 2014) ....................................................................................... 12

*CyberSource Corp. v. Retail Decisions, Inc.,*
   654 F.3d 1366 (Fed. Cir. 2011) ............................................................................................... 7

*DDR Holdings, LLC v. Hotels.com, L.P.,*
   773 F.3d 1245 (Fed. Cir. 2014) ............................................................................................. 14

*Diamond v. Chakrabarty,*
   447 U.S. 303 (1980) ................................................................................................................ 6

*Diamond v. Diehr,*
   450 U.S. 175 (1981) ................................................................................................................ 7

*Enfish, LLC v. Microsoft Corp.,* 822 F.3d 1327 (Fed. Cir. 2016) ................................................. 14

*Gottschalk v. Benson,*
   409 U.S. 63 (1972) .................................................................................................................. 6

*In re TLI Commc'ns LLC Patent Litig.,*
   823 F.3d 607 (Fed. Cir. 2016) ............................................................................................... 15

*Intellectual Ventures I LLC v. Capital One Bank U.S.A.,*
   792 F.3d 1363 (Fed. Cir. 2015) ............................................................................................. 15

*Intellectual Ventures I LLC v. Capital One Fin. Corp.,*
   850 F.3d 1332 (Fed. Cir. 2017) ............................................................................................. 11

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015) ....................................................................................... 9, 13, 17

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
    66 F. Supp. 3d 829 (E.D. Tex. 2014) ...................................................................................... 18

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    132 S. Ct. 1289 (2012) ....................................................................................................... 7, 17

*Morales v. Square, Inc.*,
    75 F. Supp. 3d. 716 (W.D. Tex. 2014), *aff'd*, 621 F. App'x 660 (Fed. Cir. 2015), *cert. denied*,
    136 S. Ct. 1461 (2016) ............................................................................................................ 8

*Parker v. Flook*,
    437 U.S. 584 (1978) ................................................................................................................. 7

*Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*,
    No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938 (E.D. Tex. Mar. 8, 2017) .............................. 8

*Recognicorp, LLC v. Nintendo Co., Ltd.*,
    855 F.3d 1322 (Fed. Cir. 2017) ....................................................................................... 11, 15

*Robinson v. Family Dollar Inc*,
    679 F. App'x 126 (3d Cir. 2017) ............................................................................................. 5

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
    873 F.3d 905 (Fed. Cir. 2017) ...................................................................................... 12, 13, 15

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) ....................................................................................... 6, 9, 13

**Statutes**
35 U.S.C. § 101 ............................................................................................................................ 6

**Rules**
Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 2, 5

## I.      NATURE AND STAGE OF THE PROCEEDINGS

On July 7, 2018, Plaintiff Coding Technologies, LLC ("Coding Technologies") filed this lawsuit alleging that Defendant Primo Water Corporation ("Primo") has infringed U.S. Patent No. 8,540,159 ("the '159 patent"). Coding Technologies claims that Primo has infringed claims 1, 2, 3, 8, 9, 10, 15, and 16 ("asserted claims") of the '159 patent through Primo's alleged "internal testing" of a Quick Response ("QR") code. (D.I. 1 ("Compl.").) In response, Primo files this motion to dismiss.

## II.     SUMMARY OF ARGUMENT

Primo respectfully requests that this Court dismiss the Complaint. The claims of the '159 patent are directed to the abstract idea of data recognition and retrieval. Yet data recognition and retrieval, such as recognizing and retrieving information associated with a bar code, are not technological improvements, inventive ways of applying conventional technology, or even new (as the specification of the '159 patent  acknowledges). Also, none of the claims recites any specific hardware or software. Instead, the specification discloses only that the alleged invention uses off-the-shelf computer components and devices like a "mobile phone," a "scanner," and a "server" to perform conventional activities like "processing," "decoding," "transmitting," and "receiving" information. The '159 patent attempts to remove a basic idea (data recognition and retrieval) from the public domain without disclosing any particularized application of that idea. Therefore, the '159 patent is invalid under 35 U.S.C. § 101 for failure to claim subject matter that is eligible for patent protection.

Neither discovery nor formal claim construction are necessary for this Court to determine that the '159 patent is invalid as a matter of law under 35 U.S.C. § 101. Dismissal of the Complaint at the pleading stage is appropriate and would avoid wasting the Court's and parties' resources litigating an invalid patent. Primo respectfully requests that the Court dismiss the

Complaint for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

## III.     STATEMENT OF FACTS

### A.      The '159 Patent

The '159 patent entitled "Method for Providing Service Using Code-Pattern" issued on September 24, 2013. (Compl. ¶ 8.) Coding Technologies asserts 8 claims, four independent (1, 8, 15, 16), and four dependent (2, 3, 9, 10). The asserted claims are generally directed to methods for retrieving website information on a mobile device by "decoding" a "code pattern" (e.g., bar code or QR code) to obtain a website address (e.g., a URL).

The applicants noted that "mobile terminals have been widely used" and that "various mobile services using mobile terminals are being developed." (Compl. Ex. A[1] at 1:29-31.) They further noted that accessing information on a website using a URL was common. (*Id.* at 1:36-38 ("[I]t has been common that companies, which have their own websites, provide their URL information along with product information in advertising their products . . . .").) The applicants also acknowledged that they did not invent the concept of recognizing and retrieving information associated with a code pattern like a bar code or a QR code. (*Id.* at 11:1-6.) The specification describes that "a bar code has been extensively used in many places, such as retail stores and book stores." (*Id.* at 2:5-6.) The specification also states that "obtaining certain information from a code pattern" was in the prior art. (*Id.* at 2:12-15.) The applicants noted, however, that "there are still needs for a new mobile service to provide various content more conveniently and to allow users to use various services more easily." (*Id.* at 1:32-35.) Thus, the applicants hoped to provide a user with "convenient" access to a company's website by obtaining a URL "more easily."

[1] "Compl. Ex. A" refers to the '159 patent attached to the Complaint as Exhibit A.

Claim 1, set forth below, is representative of the asserted claims:

1. A method of providing content with the use of a code pattern by a user terminal, the method comprising:

obtaining a photographic image of a code pattern by a camera of the user terminal;

processing, by a processor of the user terminal, the photographic image of the code pattern to extract the code pattern from the photographic image;

decoding the extracted code pattern by the processor of the user terminal into code information;

transmitting a content information request message to a server based on the code information; and

receiving content information from the server in response to the content information request message.

(*Id.* at 38:33-45.)

Claim 1 has five main steps: (1) capturing an image with a camera of a "user terminal"; (2) processing the captured image with a "processor"; (3) decoding information extracted from the captured image by the "processor"; (4) sending a request to a "server" based on the decoded information; and (5) receiving information from the "server" in response. Coding Technologies reads these steps as: (1) taking a photograph; (2) recognizing the image in the photograph and converting the image to a digital format; (3) reading digital information, like a URL, from the digital image; (4) requesting a web-page based on the URL; and (5) rendering the webpage. Simply put, claim 1 is directed to recognizing and retrieving information associated with a pattern.

The applicants made clear, through their own language, that the components for carrying out the claimed method are nothing more than generic computing and networking elements. For example, the so-called "user terminal" can be virtually any computer or mobile device capable of

taking a photograph. (*Id.* at 8:47-50 ("A wireless communication terminal, such as a mobile phone, a Personal Communications Service (PCS) and a Personal Digital Assistant (PDA), can be used as the user terminal 10."); *id.* at 8:61-63 ("Further, a Personal Computer (PC) or a notebook computer, as well as a mobile terminal, can be used as the user terminal 10.").)

The claimed "processor" that "process[es] . . . the photographic image of the code pattern to extract the code pattern from the photographic image," (*id.* at 38:37-39) simply "functions to recognize (or photograph) the barcode 60, convert recognized (photographed) analog image data into digital image data, and transmit the digital image data to the decoder 13 in the present invention." (*Id.* at 10:8-13.)

**FIG. 3**



(*Id.* at Fig. 3.) No details are provided either in the claims or the specification as to how the photograph is converted from analog image data to digital image data. No specialized equipment is required. Instead, the "photographing unit 11" can be "[a] scanner, a PC camera, a digital camera, a Web camera *or the like*." (*Id.* at 10:14-17 (emphasis added).) The claimed "processor" that "decod[es] the extracted code pattern . . . into code information" simply "functions to analyze digital image data received from the photographing unit 11 and extract code information from the analyzed digital image data." (*Id.* at 10:18-20.) No specialized equipment or programming is required or disclosed in either the claims or specification. Instead, the specification states only that "[t]he decoder 13 can be implemented with a one-dimensional or two-dimensional code recognizer depending on the type of the barcode 60." (*Id.* at 10:20-23.)

The "code information" (i.e., the web page address information or URL) is then "transmitted" to the service provider server along with the "content information request." (*Id.* at 2:45-47.) Content information (i.e., the webpage) is then received at the user terminal from the service provider server. (*Id.* at 2:47-49.) The service provider server of the asserted claims[2] performs the basic functions of a web server and must only be capable of receiving information, like a URL, and rendering a webpage. (*Id.* at 8:64-9:5 ("The service provider server 130 is a computer provided in a service provider that provides the content providing service of the present invention, and functions to extract corresponding content and transmit the content to the user terminal 10 . . . and transmit the Web page information to the user terminal 10 . . . .").)

## IV.    ARGUMENT

### A.    Legal Standard for Dismissal

#### 1.    This Case Should Be Dismissed at the Pleading Stage Pursuant to Rule 12(b)(6)

A complaint should be dismissed if a plaintiff "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and "the factual allegations pleaded must be enough to raise a right to relief above the speculative level." *Robinson v. Family Dollar Inc*, 679 F. App'x 126, 131 (3d Cir. 2017) (internal quotations omitted). Although factual allegations are taken as true, legal conclusions are given no deference and are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting principle that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions"). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point

---

[2] In the nonasserted claims, the service provider server also retrieves information from a database. (Compl. Ex. A at cls. 4, 5, 6, 7, 11, 12, 13, 14 & 17.)

of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (internal citations and quotations omitted).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring). In those situations, claim construction is not required to conduct a § 101 analysis. *Bancorp Servs. L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("claim construction is not an inviolable prerequisite to a validity determination under § 101").

### 2.      The Requirements of 35 U.S.C. § 101

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. Also, the law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980). Abstract ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski*, 561 U.S. at 611-12. In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972).

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent

in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and alterations omitted).

Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id.* at 2357, *quoting Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). Indeed, if a claim could be performed in the human mind, or by a human using pen and paper, it is not patent-eligible. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371-72 (Fed. Cir. 2011). Also, a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity—such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 132 S. Ct. at 1297-98, 1300-01; *Bilski*, 561 U.S. at 610; *Diamond v. Diehr*, 450 U.S. 175, 191-92 & n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978). Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300.

## B.     The '159 patent is Invalid under 35 U.S.C. § 101.

The claims of the '159 patent are invalid under 35 U.S.C. § 101 because they fail both prongs of the *Alice* test. Each of the claims is directed to the abstract idea of data recognition and retrieval. Abstract ideas are not eligible for patenting. None of the claims contains an "inventive concept sufficient to ensure that the patent in practice amounts to *significantly more* than a patent upon the ineligible concept itself." *Alice*, 134 S. Ct. at 2355 (emphasis added). Coding Technologies' Complaint should be dismissed.

### 1.     *Alice* Step 1

In determining patent eligibility under § 101, the Court must first determine whether the claims are directed to an abstract idea. *Alice*, 134 S. Ct. at 2355. Under any plausible reading, the

claims of the '159 patent are directed to a patent-ineligible, abstract idea because they claim nothing more than the "longstanding," "routine," and "conventional" concept of data recognition and retrieval. *See Alice*, 134 S. Ct. at 2356; *Bilski*, 561 U.S. at 611.

> **(a)** **Claim 1 of the '159 patent is directed to the abstract idea of data recognition and retrieval.**

Claim 1 of the '159 patent is representative of the claims.[3] *See, e.g., Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*, No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938, at *8-9 (E.D. Tex. Mar. 8, 2017) (invalidating 974 claims after analyzing only a few "representative claims" where the other claims were "substantially similar" and "linked to the same abstract idea."). In assessing whether claim 1 is directed to an abstract idea, the Court must look past the claim language for the purpose of the claim to determine what the invention is trying to achieve. *Morales v. Square, Inc.*, 75 F. Supp. 3d 716, 725 (W.D. Tex. 2014), *aff'd*, 621 F. App'x 660 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 1461 (2016). Claim 1 is simply "trying to achieve" a "convenient" way to obtain a URL in order to access a website, consisting of nothing more than a set of basic ideas like retrieving, processing, decoding, and sending data:

| Claim Language | Claimed idea |
|---|---|
| A method of providing content with the use of a code pattern by a user terminal, the method comprising: | |
| obtaining a photographic image of a code pattern by a camera of the user terminal; | Retrieving data |
| processing, by a processor of the user terminal, the photographic image of the code pattern to extract the code pattern from the photographic image; | Processing data |
| decoding the extracted code pattern by the processor of the user terminal into code information; | Decoding data |
| transmitting a content information request message to a server based on the code information; and | Sending data |
| receiving content information from the server in response to the | Receiving data |

---

[3] Where claims are "substantially similar and linked to the same abstract idea," courts may look to representative claims in a § 101 analysis. *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

| content information request message. | |
|---|---|

At a high level, this claim describes the most generic functional steps of a standard computer (i.e., sending, receiving, processing, decoding data). Such a broad concept is not patent-eligible because it "recite[s] an abstraction—an idea, having no particular concrete or tangible form." *See Ultramercial*, 772 F.3d at 715. The fact that the claim purports to implement the steps with conventional components like a "user terminal," a "processor," and a "server" does not make it any less abstract.

The applicants admit that recognizing and retrieving information associated with a pattern like a barcode was a routine, well-known task at the time of the invention. (Compl. Ex. A at 2:5-15.) The specification discloses that the purported problem the applicants wanted to resolve was to provide a user "convenient" access to a company's website by obtaining a URL "more easily." (*Id.* at 1:32-35.) However, performing a task more efficiently, without more, does not confer patent eligibility. *See Bancorp*, 687 F.3d at 1279 ("Using a computer to accelerate an ineligible mental process does not make that process patent-eligible."). Furthermore, the applicants failed to disclose the details of how to achieve such "convenient" access and instead describe the system only at a high level of generality; that is, the claims cover only the resulting system the applicants envisioned, not how to implement it, much less how to do so in any non-conventional manner. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) (concluding that claim was not directed to patent-eligible subject matter where "[t]he mechanism for maintaining the state is not described, although this is stated to be the essential innovation."). For example, the specification indicates that the image can be converted into digital data using a generic "scanner, a PC camera, a digital camera, a Web camera or the like," (Compl. Ex. A at 10:14-17), and the image can be "decoded" using a generic "one-

dimensional or two-dimensional code recognizer depending on the type of the barcode 60," (*id.*

at 10:20-23.) No additional details are provided. It is impermissible for a patent to claim a result,

without disclosing any application or implementation to accomplish that result.

> **(b)     Similar patent claims have been found to constitute patent-ineligible subject matter.**

Courts have found similar patent claims to be ineligible subject matter. In *Content*

*Extraction*, the claims generally recited "a method of 1) extracting data from hard copy

documents using an automated digitizing unit such as a scanner, 2) recognizing specific

information from the extracted data, and 3) storing that information in a memory." *Content*

*Extraction*, 776 F.3d at 1345. The claimed method could be "performed by software on an

automated teller machine (ATM) that recognizes information written on a scanned check, such as

the check's amount, and populates certain data fields with that information in a computer's

memory." *Id.* The Federal Circuit concluded in *Alice's* first step that the claims were "drawn to

the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set,

and 3) storing that recognized data in a memory"; or, put simply: "data recognition and storage."

*Id.* at 1347. In rejecting the plaintiff's argument that the claims were not abstract because they

required the use of a scanner, the Federal Circuit likened the claims to those found abstract in

*Alice*, which "also required a computer that processed streams of bits." *Id.* Like the *Content*

*Extraction* claims, claim 1 of the '159 patent is abstract because it just "collect[s] data" (obtains

an image) and "recogniz[es] certain data within the collected data set" (decodes the image to

obtain a URL).[4] *See id.*

---

[4]  The patent claims in *Content Extraction* directed to data recognition and storage are similar to
the claims of the '159 patent directed to data recognition and retrieval.

In *Recognicorp*, the Federal Circuit found the patent claim at issue to be directed toward

the abstract idea of "encoding and decoding image data." *Recognicorp, LLC v. Nintendo Co.,*

*Ltd.*, 855 F.3d 1322, 1324 (Fed. Cir. 2017). The patent claim at issue in *Recognicorp* recited:

> 1. A method for creating a composite image, comprising:
>
>> displaying facial feature images on a first area of a first display via a
>> first device associated with the first display, wherein the facial feature
>> images are associated with facial feature element codes;
>>
>> selecting a facial feature image from the first area of the first display
>> via a user interface associated with the first device, wherein the first
>> device incorporates the selected facial feature image into a composite
>> image on a second area of the first display, wherein the composite
>> image is associated with a composite facial image code having at least
>> a facial feature element code and wherein the composite facial image
>> code is derived by performing at least one multiplication operation on
>> a facial code using one or more code factors as input parameters to the
>> multiplication operation; and
>>
>> reproducing the composite image on a second display based on the
>> composite facial image code.

*Id.* The Federal Circuit described the claim as a "method whereby a user displays images on a

first display, assigns image codes to the images through an interface using a mathematical

formula, and then reproduces the image based on the codes." *Id.* at 1326. The Federal Circuit

held that this method reflected "standard encoding and decoding." *Id.*

The Federal Circuit then explained that encoding and decoding data is "an abstract

concept long utilized to transmit information." *Id.* (citing *Intellectual Ventures I LLC v. Capital*

*One Fin. Corp.*, 850 F.3d 1332, 1340-41 (Fed. Cir. 2017) (organizing, displaying, and

manipulating data encoded for human- and machine-readability is directed to an abstract

concept)). The Federal Circuit provided several examples of long-utilized methods of encoding

and decoding of data to transmit information: "Morse code, ordering food at a fast food

restaurant via a numbering system, and Paul Revere's 'one if by land, two if by sea' signaling

11

system all exemplify encoding at one end and decoding at the other end." *Id.* Claim 1 of the '159 patent likewise merely decodes an image to obtain information, which is an abstract concept.

Additionally, in *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905 (Fed. Cir. 2017), the Federal Circuit found claims directed to encoding and decoding a QR code invalid under both *Alice* steps. The *Secured Mail* claims "provide[d] a method whereby a barcode is generated, affixed to a mail object, and sent through the mail system [and] then, upon receipt, the barcode is scanned, and data corresponding to the sender is sent to the recipient over the network and displayed on the recipient's device" *Id.* at 910-11.  The Federal Circuit found that "each step of the process is directed to the abstract process of communicating information about a mail object using a personalized marking." *Id.* at 911. Because the claims were "non-specific and lack[ed] technical detail," utilizing "well-known" technologies and generic hardware, the Federal Circuit concluded that the *Secured Mail* claims lacked an inventive concept. *Id.* at 912.

The idea underlying claim 1 of the '159 patent is just as abstract as that of the *Content Extraction*, *Recognicorp*, and *Secured Mail* claims. Claim 1 does not include any specific limitations or steps regarding extracting data or decoding the data. Rather, all of the steps required to carry out the method are directed to the generic, conventional ideas of recognizing an image, decoding the image, and then doing something based upon the decoded information. *See Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 992 (Fed. Cir. 2014) (finding claim directed to "the well-known concept of categorical data storage, *i.e.*, the idea of collecting information in classified form, then separating and transmitting that information according to its classification, is an abstract idea that is not patent-eligible"). The fact that claim 1 sends and receives the decoded information over a network does not make it any less abstract.

*See, e.g., Ultramercial*, 772 F.3d at 716 (noting that "the use of the Internet is not sufficient to save otherwise abstract claims from ineligibility under § 101") (citation omitted).

By only claiming the desired result—recognizing and retrieving information associated with a pattern like a barcode—without describing any specific roadmap for doing so, claim 1 of the '159 patent  fails to claim eligible subject matter under § 101. *See Internet Patents*, 790 F.3d at 1348; *Secured Mail*, 873 F.3d at 910-11.

### 2. *Alice* Step 2

Because claim 1 is directed to an abstract idea, the Court must next determine whether it contains an "inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice*, 134 S. Ct. at 2357 (internal quotations omitted). To pass this test, claim 1 "must include additional features" that "must be more than well-understood, routine, conventional activity." *Ultramercial*, 772 F.3d at 715 (quotation omitted). Claim 1 of the '159 patent is broadly generic and does not contain meaningful limitations that would restrict it to a non-routine, specific application of the abstract idea.

#### (a) Claim 1 contains no inventive concept to transform the abstract idea into patent-eligible subject matter.

The stated goal of the '159 patent is to provide a "convenient" way for users to access a company's website (Compl. Ex. A at 1:32-35), and yet not a single technical improvement is disclosed, much less claimed. Instead, each of the five steps recited in claim 1 of the '159 patent is described only at a high level of generality as "obtaining a photographic image," "processing . . . the photographic image . . . to extract a code pattern," "decoding the extracted code pattern," "transmitting a content information request message to a server," and "receiving content information from the server." (*Id.* at 38:33-45.)

13

To achieve these steps, claim 1 recites the use of a "user terminal," a "processor," and a "server." But the claimed "user terminal" can be virtually any device capable of taking a photograph. (*Id.* at 8:47-50, 8:61-63.) All that is required to "process the image to extract a code pattern" is "[a] scanner, a PC camera, a digital camera, a Web camera or the like," (*id.* at 10:14-17), and either "a one-dimensional or two-dimensional code recognizer" is used to "decod[e] the extracted pattern." (*Id.* at 10:20-23.) The claimed "server" only performs basic functions of a conventional web server like receiving information (such as a URL or HTML request) and rendering a webpage. (*Id.* at 8:64-9:5.)

The applicants' own characterizations demonstrate that the claimed components do not "improve the functioning of the computer itself," *Alice*, 134 S. Ct. at 2359, by disclosing, for example, an "improved, particularized method of digital data compression," *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014), or improving "the way a computer stores and retrieves data in memory." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016). In *Enfish*, the Federal Circuit distinguished the claims from others that "simply add[ed] conventional computer components to well-known business practices," holding instead that "they [we]re drawn to a specific improvement to the way computers operate." *Id.* at 1336. In particular, the unconventional structure of the database resulted in "increased flexibility, faster search times, and smaller memory requirements." *Id.* at 1337. Unlike *Enfish*, nothing in claim 1 of the '159 patent discloses any unconventional methodology that would amount to a "specific improvement in the way computers operate." *Id.* at 1336.  The focus of the '159 patent , therefore, is not "on [a] specific asserted improvement in computer capabilities" but instead "on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Id.*

There is simply nothing "inventive" about using a known process (i.e., decoding a barcode) to access a website. *See Secured Mail*, 873 F.3d at 912. Moreover, the abstract functional descriptions in claim 1 are devoid of any technical explanation as to how to implement the purported invention in an inventive way. *See In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 615 (Fed. Cir. 2016) (claims failed *Alice's* step 2 where specification limited its discussion of "additional functionality" of conventional components "to abstract functional descriptions devoid of technical explanation as to how to implement the invention"). Similar to the invalidated claim in *Recognicorp*, nothing in claim 1 "'transforms' the abstract idea of encoding and decoding [(i.e., recognizing)] information into patent-eligible subject matter." 855 F.3d at 1328 (citing *Alice*, 134 S. Ct. at 2357).

Courts have repeatedly held that the presence of generic hardware and software like the kind recited in claim 1 of the '159 patent does not make an otherwise abstract idea patent-eligible. *See, e.g., buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."); *Content Extraction*, 776 F.3d at 1348 ("At most, [the] claims attempt to limit the abstract idea of recognizing and storing information from hard copy documents using a scanner and a computer to a particular technological environment. Such a limitation has been held insufficient to save a claim in this context."); *Bancorp*, 687 F.3d at 1276-77. In addition, an "abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment, such as [mobile services]." *Intellectual Ventures I LLC v. Capital One Bank U.S.A.*, 792 F.3d 1363, 1366 (Fed. Cir. 2015).

This case is therefore unlike *Berkheimer*, where the Federal Circuit noted that the specification explicitly "describe[d] an inventive feature that store[d] parsed data in a

15

purportedly unconventional manner." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018). The Federal Circuit then examined whether the improvements described in the specification were included in the claims. For those claims where the inventive feature in the specification was "captured in the claims," the Federal Circuit found a "factual dispute regarding whether the invention describe[d] well-understood, routine, and conventional activities." *Id.* But where the claims did not recite the purportedly inventive features described in the specification, the Federal Circuit concluded that they were directed to patent-ineligible subject matter under § 101. *Id.* Here, there is no need for fact discovery at all because neither the claims nor the specification in the '159 patent describes any unconventional components or the use of generic components in some unconventional manner. The claims therefore fail *Alice's* second step because they contain no inventive features, and no amount of fact discovery can change that deficiency.

As discussed above, the purported point of novelty of the '159 patent is the result of providing a "convenient" way for users to obtain a URL in order to access a company's website (Compl. Ex. A at 1:32-35), but claim 1 of the '159 patent does not describe any particular non-conventional *mechanism* for achieving the result. The recited limitations—whether considered individually or as an ordered combination—are insufficient to add "significantly more" to the abstract idea. Because it is altogether devoid of any "inventive concept," claim 1 of the '159 patent is patent-ineligible under § 101. *See Alice*, 134 S. Ct. at 2359-60.

### 3.      The Remaining Claims Are Likewise Abstract

The remaining asserted claims of the '159 patent relate to the same abstract concept of recognizing and retrieving information associated with a pattern. The only differences are immaterial in the context of a § 101 analysis and relate to (i) the type of content received (i.e., "image, sound, moving picture, or text data"); (ii) the type of information extracted from the

16

image (i.e., a "URL"); and (iii) additional generic components (e.g., a "transceiver" for transmitting and receiving information and "[a] non-transitory machine-readable storage medium, having encoded thereon program code"). (*See, e.g.*, Compl. Ex. A at cls. 2, 3, 8, 9, 10, 15, 16.) But specifying the type of content that is received or extracted is a token or insignificant pre-solution activity insufficient to transform the abstract idea into patent-eligible subject matter. *See Mayo*, 132 S. Ct. at 1297-98, 1300-01. So too is the claims' identification of additional generic components—particularly since there is no disclosure of how any of the generic components (e.g., "transceiver") must be configured in any "inventive" manner in order to accomplish the desired results. *See Internet Patents*, 790 F.3d at 1348.

The unasserted claims fare no better. For example, the unasserted claims of the '159 patent include the additional limitations (i) that the server retrieves information from a database and returns that information to the user terminal (claims 4, 11, 17); (ii) that specifies the type of information sent to the server (claims 5, 12); and (iii) regarding the type of information retrieved from the database (claims 6, 7, 13, 14).

None of these additional features amounts to an inventive feature or renders the claims any less abstract. Regardless of their form, therefore, all of the claims of the '159 patent fail both prongs of *Alice* because they are directed to an abstract idea and recite no inventive concept. *See Alice*, 134 S. Ct. at 2355, 2357.

### 4.      The Risk of Preemption Confirms that the Claims Are Abstract

Because the claimed method and system can be implemented using virtually any device capable of taking a photograph (e.g., a smartphone), any process capable of converting an analog image to a digital format (e.g., a scanner), any process capable of reading digital information (e.g., a standard code recognizer), and any conventional server capable of sending and receiving information, the '159 patent risks preempting *all* automated methods or systems for data

recognition and retrieval. *See, e.g., Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829, 843 (E.D. Tex. 2014) (finding "preemptive effect . . . broad" where "the claims [were] largely functional in nature . . . and "[a]ll that [was] disclosed [was] the ultimate objective"). The claims of the '159 patent implicate the same preemption concern undergirding the § 101 analysis and should be found ineligible.

## V.     CONCLUSION

For the foregoing reasons, Primo respectfully requests that the Court dismiss the Complaint for failure to state a claim upon which relief can be granted. Primo respectfully requests dismissal with prejudice, because amendment of the Complaint would be futile.

Dated: October 3, 2018

/s/ *Kristen Healey Cramer*
Kristen Healey Cramer (No. 4512)
Randolph M. Vesprey (No. 6474)
WOMBLE BOND DICKINSON (US) LLP
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
(302) 252-4320
Kristen.Cramer@wbd-us.com
Randy.Vesprey@wbd-us.com

OF COUNSEL:

Jacob S. Wharton
WOMBLE BOND DICKINSON (US) LLP
One West Fourth Street
Winston-Salem, NC 27101
(336) 747-6609
Jacob.Wharton@wbd-us.com

*Attorneys for Primo Water Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of October, 2018, I electronically filed a true and correct copy of **DEFENDANT PRIMO WATER CORPORATION'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM** via CM/ECF which will automatically send email notification of such filing to the attorneys of record.

Dated: October 3, 2018

/s/ *Kristen Healey Cramer*
Kristen Healey Cramer (No. 4512)
WOMBLE BOND DICKINSON (US) LLP
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
(302) 252-4348
Kristen.Cramer@wbd-us.com